UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MAC ROLLINS BELL and RICHARD MCMURTRY BELL, | ) ) ) | Civil Action No. 5:18-CV-032-CHB |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| CHRISTINA BELL JEFFERSON, as Executrix of the Estate of Carol S. Bell, | ) ) ) | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Although Macky Bell moved to North Carolina decades ago, she left her pocketbook in Cynthiana, Kentucky. Macky Bell maintained her entire financial life in Cynthiana – including her bank account, her CPA, her lawyer, and her life savings, invested in several accounts held with an Edward Jones Investment advisor located in Cynthiana, Kentucky. When Macky Bell finally moved her investment accounts from Cynthiana to North Carolina in late 2016 and removed her sons (the Plaintiffs) as POA on those accounts, they sued her, claiming breach of fiduciary duty and conversion. Macky Bell[1] moved to dismiss this lawsuit alleging that this Court has no personal jurisdiction over her, or in the alternative, she requested this action be transferred to North Carolina. [R. 4] Plaintiffs responded in opposition, and Defendant replied. [R. 5; R. 6.] The Court held an evidentiary hearing on the issues. *See* [R. 24; R. 31] For the reasons stated herein, the Court will **DENY** Defendant's Motion to Dismiss and will **DENY** Defendant's alternative Motion to Transfer.

---

[1] Defendant Christina Bell Jefferson, Executrix of the Estate of Carol S. Bell ("Christina Bell Jefferson"), was substituted for Defendant Carol S. ("Macky") Bell following her death on September 3, 2018. [R. 23]

- 1 -

## I.    Background

Plaintiffs Mac Rollins Bell ("Mac Bell") and Dr. Richard McMurtry Bell ("Dr. Rick Bell") sued their mother, Carol S. Bell ("Macky Bell") and their daughter/niece, Christina Bell Jefferson ("Jefferson") in Kentucky state court claiming conversion and breach of fiduciary duty related to an investment account held with a local Edward Jones financial advisor in Cynthiana (the "Farm Account" or "Account"). [R. 1-1]  After removing to this Court, Defendant filed this Motion. [R. 2].  Macky Bell died on September 3, 2018 during the pendency of this Motion.[2] On May 15, 2019, the Court granted the Plaintiffs' renewed Motion to Substitute Party [R. 21], and Ordered Jefferson, Executrix of the Estate of Macky Bell, to substitute for Defendant Macky Bell. [R. 18; R. 23]  Plaintiffs voluntarily dismissed their claims against Jefferson in her individual capacity [R. 28], and she remains in this lawsuit solely as the Executrix of the Estate of Macky Bell.

Many of the facts pertinent to the instant Motion are not in dispute.  Mac Bell is the only Kentucky resident in this action. [R. 1-1, at ¶ 1].  Dr. Rick Bell is a South Carolina resident. *Id.* at ¶ 2.  Macky Bell resided in North Carolina since at least the late 1980s, and her estate is being administered in Hyde County, North Carolina. *Id.* at ¶ 3; [R. 2-1, Ex. A., Aff. Macky Bell, at ¶ 4; R. 10-1, Ex. A., North Carolina Estate Filings]  Jefferson is a Virginia resident. *Id.* at ¶ 4; [R. 2-3, Ex. B., Aff. Jefferson, at ¶ 4; R. 10-1, Ex. A., North Carolina Estate Filings].

Plaintiffs' claimed interest in the Farm Account traces back to the 1998 sale of the family farm located in Harrison County (Cynthiana), Kentucky (the "Family Farm").  Macky Bell held a

---

[2] The Court must still determine whether personal jurisdiction existed over Macky Bell at the time the Plaintiffs' suit was brought, regardless of her death and subsequent substitution in this case. The Court granted Plaintiffs' Motion to Substitute Party under Rule 25 while Defendants' Motion to Dismiss remained pending. Therefore, Plaintiffs must still demonstrate that the Court has jurisdiction over the claims arising from Macky Bell that the Substituting Party assumes. [R. 23]; Fed. R. Civ. P. 25(a)(1).

life estate in the Family Farm, and Plaintiffs held the remainder interest by virtue of certain bequests under the wills of Kathryn M. Stanton (Macky Bell's mother and Plaintiffs' grandmother) and Richard M. McMurtry (Macky Bell's uncle and Plaintiffs' great uncle). [R. 1-1, Complaint, at ¶¶ 6-7; R. 30, Pls. Exs. 1, 2, 3] The Parties sold the Family Farm in January 1998, and all the Parties to this action (along with relevant spouses) signed the transfer deeds by virtue of the life estate and remainder interest. *Id.* at ¶ 8; [R. 30, Pls. Exs. 1, 2, 3; R. 2-4, Letter from Katherine S. Parker-Lowe to S. Chad Butcher ("Parker-Lowe Letter") (Aug. 22, 2017);] The proceeds from the sale (about $763,00 at the time) "representing both the life estate and the remainder, were invested jointly in the name of [Macky] Bell" in the Farm Account. *See id.* at ¶ 9; [R. 2-4, Parker-Lowe Letter] Plaintiffs claim the investment in the Farm Account constitutes a "joint venture" by express or implied agreement, or a "constructive trust" under Kentucky law, although the Farm Account remained solely in the name of their mother. *See id.* at ¶¶ 25-31; ¶¶ 36-43. The proceeds remained in the Farm Account about 18 years until late 2016 and earned substantial interest. *Id.* Around November 2016, Macky Bell and her sons had a falling out. Macky Bell called her long-time Cynthiana Edward Jones advisor, Mark Trachsel ("Trachsel"), and directed him to remove her sons as power of attorneys ("POA"s) on the Account and to move it (along with her other accounts) to an Edward Jones advisor located in North Carolina. [R. 2-4, Parker-Lowe Letter; R. 1-1, Compl., at ¶¶ 10-11] At the time Macky Bell moved the various accounts to North Carolina, they totaled around $1,800,000, representing the vast majority of her life savings.

After being denied access to the Farm Account and removed as POA, Plaintiffs sought an accounting of the Farm Account, but were "denied at every turn." [R. 1-1, Compl., at ¶ 12] A letter dated August 22, 2017 from Katherine S. Parker-Lowe, Macky Bell's North Carolina

attorney, denied Plaintiffs' request for an accounting, explaining that these accounts were in "Mrs. [Macky] Bell's individual name . . . " and that "Mrs. Bell lives here in North Carolina [and] the accounts have now been moved to North Carolina." *Id.*; [R. 2-4, Parker-Lowe Letter] Plaintiffs claim that Macky Bell's refusal to provide an accounting and return of their investment constitutes conversion and breach of fiduciary duty. [R. 1-1, Compl., at ¶¶ 15-48]

Defendant argues that the Plaintiffs have not established either general or specific jurisdiction over her. [R. 2-1, Def. Mem. in Supp.] In support of the Motion to Dismiss, Macky Bell submitted an affidavit, stating that: 1) she was a North Carolina resident; 2) she owned no real property or business interests in Kentucky; 3) she had been to Kentucky once over the last five years; 4) she had not visited Kentucky since October 2016; 5) she spoke with an Edward Jones representative to change the financial advisor listing from an individual in Cynthiana, Kentucky, to an individual in North Carolina; and 6) she had not traveled outside of the Outer Banks area of North Carolina since December 2016. [R. 2-2, Ex. A, Macky Bell Aff.]

The Court held an evidentiary hearing on July 10, 2019. [R. 31] At the hearing both Plaintiffs both testified and also called the following witnesses: Michelle Berger ("Berger"), who works for City National Bank in Cynthiana, Kentucky; James Ingram ("Ingram"), Macky Bell's Certified Public Accountant ("CPA") who works in Cynthiana, Kentucky; and Trachsel, Macky Bell's former Edward Jones financial advisor, who works in the Cynthiana, Kentucky branch of

Edward Jones.[3]  Defense counsel called Jefferson.[4]

The testimony at the evidentiary hearing established that from 1998 until late 2016, Macky Bell maintained multiple accounts with Trachsel, including the Farm Account.   Macky Bell and her late husband signed the account opening documents in Kentucky, and after his death, she solely directed all transactions in and out of the Farm Account through her financial advisor, Trachsel.[5]  According to Trachsel, Macky Bell would call him from North Carolina at his office in Kentucky "daily" if a particular need arose, but certainly monthly, to manage her investments.  Per the testimony of Trachsel, Dr. Rick Bell, and Jefferson, the Farm Account grew considerably over the years, and Macky Bell's total investments with Edward Jones grew to over $1,800,000 by the time of her death, representing the vast majority of her life savings.  Until her death, Macky Bell also kept her primary checking account with what was originally a local Cynthiana bank, now owned by City National Bank.  She had her monthly teacher's retirement, social security, and interest income from the Farm Account transferred to this bank account,

---

[3] Defendants objected at the hearing that Plaintiffs' counsel failed to properly serve them under Fed. R. Civ. P. 45. Under Rule 45(a)(4), "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party. " Fed. R. Civ. P. 45(a)(4).  Here, none of the witnesses who were subpoenaed by Plaintiffs' counsel were instructed to produce documents or other tangible items.  Therefore, Defendant's objection is inapplicable based on the kind of subpoena issued.  Even if that were the case, the Court's Order setting the hearing gave all parties fair notice of the questions the Court expected to be answered, and Defendant held the majority of such information (or had easy access to it, since it involved Macky Bell's financial activities). No prejudice resulted from any such service failure given the clear expectations set by the Court. *See* [R. 24, at p. 8]
[4] At the onset of the evidentiary hearing, Defendant objected to having to present any evidence related to jurisdiction since the Plaintiffs ultimately bear the burden of establishing jurisdiction.  Even so, Defendant ultimately called Jefferson to testify.  The Court's Order setting the hearing directed that both parties were expected "to be prepared to call witnesses and present evidence that addressed the Court's specific [jurisdiction] questions." [R. 24, at p. 8]  For the reasons articulated herein, the Court would have found that jurisdiction exists whether Jefferson testified or not.
[5] Trachsel testified that he believed the Farm Account he managed for Macky Bell had a notation on the attention line designating it as the "Farm Account."  He explained that the attention line on the account statement is an informal way to distinguish (or name) the account.  Defendants admitted three Edward Jones account statements into evidence. None of the statements had "Farm Account" on the attention line, but one of the statements (ending in 4242) had the following notation in the attention line: "U/W of Kathryn M. Stanton & Richard M. McMurtry."  Given the testimony of Dr. Rick Bell concerning the Family Farm (and the transfer deeds related to the Family Farm) it seems likely that this account was the "Farm Account."  Regardless, the testimony was clear that one of the accounts contained the proceeds from the sale of the Family Farm, and it is not necessary at this point to determine which one.

which she used to pay everyday living expenses.

Macky Bell also regularly visited Kentucky until the years just before this lawsuit. When she visited, she almost always visited her local bank, her CPA (Ingram), her Edward Jones advisor (Trachsel), and ate at Biancke's Restaurant[6], all of which were located within a couple blocks of one another in Cynthiana, Kentucky. Ingram continued to prepare her federal and state taxes (both North Carolina and Kentucky) until her death in 2018. Macky Bell also visited and consulted regularly with her long-time Cynthiana lawyer, John Swinford, until his death prior to this lawsuit.

After the falling out with her sons in late 2016, Macky Bell transferred the Farm Account to North Carolina. To accomplish this, she called Trachsel in Kentucky and directed him to transfer her Edward Jones accounts, including the Farm Account, to an Edward Jones advisor in North Carolina. She also directed Trachsel to change the POA designations on her accounts from the Plaintiffs to her granddaughter, Jefferson. Until removed as POAs, the Plaintiffs had access to the Farm Account. In fact, Trachsel testified that when the Plaintiffs were "active power of attorneys," he spoke with them as frequently as he would have spoken with Macky Bell.

## II.  Discussion

### A.  Personal Jurisdiction

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(2), Plaintiffs bear the burden of establishing that personal jurisdiction exists. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007). When the Court resolves a motion to dismiss for lack of personal jurisdiction, the Court may (1) rule on the motion on the basis of affidavits

---

[6] Available at https://www.bianckes.net (last visited August 14, 2019 at 12:07 p.m.).

alone; (2) permit discovery on the motion; or (3) hold an evidentiary hearing on the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citing *Serras v. First Tennessee Bank Nat. Assn.,* 875 F.2d 1212, 1214 (6th Cir. 1989)). Regardless of the approach, the plaintiff bears the burden of establishing that such jurisdiction exists. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261 (6th Cir. 1996). When the Court conducts an evidentiary hearing, as it did in this case, the "plaintiff must prove jurisdiction by a preponderance of the evidence." *Modern Holdings, LLC v. Corning Inc. ("Modern Holdings")*, 2015 WL 1481443, at *3 (E.D. Ky. Mar. 31, 2015) (citing *Motel 6 Operating L.P.*, 134 F.3d 1269) (other citation omitted). The Court must ultimately "depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction." *Caesars Riverboat Casino, LLC ("Caesars") v. Beach*, 336 S.W.3d 51, 59 (Ky. 2011).

A federal court sitting in diversity "may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Newberry v. Silverman*, 789 F.3d, 636, 641 (6th Cir. 2015). Under Kentucky law, this Court may exercise specific jurisdiction over Defendant Jefferson only if: "(1) jurisdiction is proper under a long-arm statute [of Kentucky] . . .; and (2) the Due Process Clause also allows for jurisdiction under the facts of the case." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If either part of this test is not met, the analysis ends, and the Court may not exercise personal jurisdiction over the defendant. *See id.* at 711-12.

## 1. Kentucky Long-Arm Statute

Kentucky's long-arm statute enumerates nine specific instances in which a non-resident defendant may be subject to personal jurisdiction. KY. REV. STAT. § 454.210(2)(a). Further, this Court may only exercise personal jurisdiction over non-resident defendants "if the cause of action arises from conduct or activity of the defendant[s] that fits into one of the statute's

enumerated categories." *Caesars*, 336 S.W.3d at 57. A claim "arises from" certain conduct

when there is a "reasonable and direct nexus" between the conduct causing injury and the

defendants' activities in the state. *Id*. at 59. The *Caesars* Court clarified that Kentucky's long

arm statute is not co-extensive with federal due process. *Id.* at 56-57. In other words, there may

be sufficient contacts to satisfy jurisdiction under the Due Process Clause, but such contacts are

insufficient for purposes of Kentucky's long arm statute. *Id.*

Kentucky's long-arm statute provides in pertinent part: "A court may exercise personal

jurisdiction over a person who acts directly or by agent, as to a claim arising from the person's

…. (1) [t]ransacting any business in this Commonwealth … [or] (3) [c]ausing tortious injury by

an act or omission in the Commonwealth." KY. REV. STAT. §§ 454.210(2)(a)(1), (3)). Plaintiffs

originally argued jurisdiction was proper under both subsections (1) and (3). [R. 5, Pls. Resp., at

p. 3] Although Plaintiffs appeared to back away from their argument under subsection (3) at the

hearing, the Court will address both.

### a. Transacting Business

Plaintiffs argue that Macky Bell transacted business in Kentucky through her extensive

financial and other ties to the Commonwealth. KY. REV. STAT. §§ 454.210(2)(a)(1). The Court

agrees.

Few Kentucky courts have interpreted what constitutes "transacting business" in the state

since the Kentucky Supreme Court's decision in *Caesars*. *See Caesars*, 336 S.W.3rd at 58

(holding that the casino transacted business in Kentucky where it not only advertised heavily in

Kentucky but also derived about half of its revenue from Kentucky residents); *Churchill Downs,*

*Inc. v. NLR Entm't, LLC*, No. 3:14-CV-166-H, 2014 WL 2200674, at \*16 (W.D. Ky. May 27,

2014) (finding defendant did not transact business in Kentucky where the contract at issue was

not signed in Kentucky, the defendant never set foot in Kentucky, and all contract-related activities within Kentucky were undertaken by the plaintiff, not the defendant).

At least one other court in the Eastern District of Kentucky has interpreted the "transacting any business" prong of the Kentucky long-arm statute to mean that "even the slightest transaction is sufficient" to bring an out of state defendant within the forum's long-arm statute. *See Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 969–70 (E.D. Ky. 2017) (citing *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504–05 (6th Cir. 2014)) (interpreting Michigan's long-arm "transacting any business" prong, which has the same transacting business language as the Kentucky statute). In *Eat More Wings*, the district court found that the out-of-state defendant's acts of sending emails to the plaintiff requesting that he send samples and instructions for plaintiff's products, knowing plaintiff was a Kentucky resident and that the requests would be fulfilled in Kentucky, was enough to satisfy the "transacting any business" requirement under Kentucky's long-arm statute. *See id.*

Also relevant to this case, the transaction of business under Kentucky's long arm statute can take place through an agent. *See, e.g., Beavers v. Riley Built, Inc.*, No. 3:14-CV-539-DJH, 2017 WL 5633258, at *5 (W.D. Ky. Nov. 22, 2017) (holding that jurisdiction existed because § 454.210(2)(a) provides jurisdiction for acts conducted "by agent" and because the plaintiffs' alleged tortious injury (defamation) was premised on statements made and actions taken by defendants' agent in Kentucky); *see also Burrell v. Duhon*, No. 5:18-CV-141-TBR-LLK, 2019 WL 2495488, at *7 (W.D. Ky. June 14, 2019).

There is no doubt that Macky Bell transacted business in Kentucky. The bulk of her financial life remained tethered to a handful of people and institutions located within a few square blocks from one another in Cynthiana, Kentucky. Macky Bell kept her life savings there,

including the Farm Account, and managed it through Trachsel, her Edward Jones advisor; she maintained her primary checking account there with a local bank; her CPA and long-time attorney remained in Cynthiana; and she signed the Farm Account opening documents in Kentucky. In addition, her retirement income, social security and interest income from the Farm Account were direct-deposited into her local Cynthiana bank account monthly, from which she paid bills and living expenses. Until just before this lawsuit was filed, Macky Bell visited Kentucky at least annually, and almost always met with Trachsel (her investment advisor), Ingram (her CPA), and Swinford (her lawyer) during these visits.

Defendant's reliance on *Modern Holdings* is misguided. There, the court found that one potential meeting in Kentucky and an isolated business contract related to its Kentucky subsidiary (a corporate guaranty) were insufficient to warrant the exercise of personal jurisdiction over the corporate parent. *Modern Holdings*, 2015 WL 1481443, at *3. The facts of this case bear no resemblance to *Modern Holdings*. Unlike the corporate parent in *Modern Holdings*, Macky Bell had extensive business contacts in Kentucky as outlined above.

Next, Defendant argues that Plaintiffs fail the *Caesars* nexus test because the harm alleged does not "arise from" Macky Bell's transaction of business in Kentucky. *See* [R. 2-1, Def. Mem. in Supp., at pp. 5-7] In order to satisfy Kentucky's long arm statute, a plaintiff "must show: (1) Defendant['s] conduct falls under a statutory category identified in KRS § 454.210(2)(a), *and* (2) [the plaintiff's] claim 'arises from' that statutory provision." *Churchill Downs, Inc.*, 2014 WL 2200674, at *5 (emphasis added) (citing *Caesars*, 336 S.W.3d at 58). A claim "arises from" certain conduct when there is a "reasonable and direct nexus" between the conduct causing injury and the defendant's activities in the state. *Id.* (citing *Caesars*, 336 S.W.3d at 59). In other words, "the statutory foundation for the assertion of long arm jurisdiction must

be the source of the plaintiff's cause of action." *Caesars*, 336 S.W.3d at 59.

Defendant argues that there is no connection between the alleged harm (Plaintiffs' claims to the cash proceeds from the sale of the Family Farm) and Macky Bell's financial activities in Kentucky. Defendant's argument, however, takes an artificially narrow view of both the law and the alleged harm in this case. Defendant maintains that Plaintiffs seek only their "portion of the sale proceeds" (or *cash*) which, they argue, has nothing to do with Macky Bell's management of the Farm Account. [R. 2-1, Def. Mem. in Supp., at p. 7] Consequently, they argue Plaintiffs fail to meet the "arising from" prong. *See generally id.* at pp. 6-7. This argument would require the Court to ignore the practical reality in this case not to mention the allegations in the Complaint. First, the cash proceeds from the sale of the Family Farm were deposited directly into the Farm Account, which Macky Bell then managed for decades, and on which Plaintiffs were POAs until late 2016.[7] Second, because the Court elected to hold an evidentiary hearing to resolve the disputed issues of fact, the Plaintiffs only had to set forth competent proof that the claims alleged in the Complaint satisfy jurisdiction by a preponderance of the evidence. *See Modern Holdings*, 2015 WL 1481443, at *3 (citing *Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998)) (other citation omitted). Here, Plaintiffs claim they had an interest in not only the cash proceeds from the sale of the Family Farm (as remainder beneficiaries), but also in those proceeds when they were "invested jointly" in the Farm Account. *See* [R. 1-1, Compl., at ¶¶ 7-9] Plaintiffs claim the Farm Account constituted a joint venture or constructive trust, and they were harmed (conversion and breach of fiduciary duty) when Macky Bell moved the Farm Account to North Carolina, removed them as POAs, and denied them an accounting and access to the Account. *Id.* at ¶¶ 10-48. Plaintiffs supplied the Court with testimony from witnesses that clarified how the Farm

---

[7] Dr. Rick Bell testified that he believed Plaintiffs were also listed as beneficiaries on the Farm Account, at least when the Account was established.

Account was set up, as well as the Deeds that accompanied the sale of the Family Farm in Harrison County.  Without reaching any conclusions on the merits of the Complaint, Plaintiffs' proof at this hearing directly correlated to the claimed harms in this case – conversion and breach of fiduciary duty – and relate squarely to Macky Bell's transacting business in Kentucky, namely her management of the Farm Account containing the proceeds from the sale of the Family Farm. More specifically, the claimed harm arises directly from one of Macky Bell's final acts of conducting business in Kentucky -- her call to Trachsel directing that he transfer the Farm Account to North Carolina and remove Plaintiffs as POAs on the Account.  The record is clear that Macky Bell called Trachsel in Kentucky and directed him to take these actions.  It makes no difference under *Caesars* that Macky Bell was sitting in North Carolina when she directed Trachsel, her agent, to accomplish her wishes.  So, even if the Court narrowed its lens on Macky Bell's business activities to focus only on the act of moving the Farm Account, that act constituted the transaction of business in Kentucky, and Plaintiffs' claims bear a "reasonable and direct nexus" to those actions.  *Caesars*, 336 S.W.3d at 59.

The Court finds that Macky Bell transacted business in the Commonwealth, and Plaintiffs' alleged harm arises from those activities within the meaning of Kentucky law. KY. REV. ST. § 454.210(2)(a)(1).

### b.   Causing Tortious Injury by an Act in Kentucky

In their Response, Plaintiffs claim personal jurisdiction is also proper under KRS § 454.210(2)(a)(3), causing tortious injury by an act in Kentucky. [R. 5, Pls. Resp. at p. 3-4] Although Plaintiffs walked back this argument during the evidentiary hearing, the Court also finds jurisdiction proper under this provision of the long arm statute.  To establish personal jurisdiction under § 454.210(2)(a)(3), Plaintiffs must demonstrate that the Defendant caused a

tortious injury by an act in Kentucky and that the claim "arises from" that act.  *Caesars*, 336

S.W.3d at 57.  Plaintiffs cite to Macky Bell's own affidavit where she states that she "personally

spoke over the phone with an Edward Jones representative [Trachsel] to change the financial

advisor listing from an individual in Cynthiana, Kentucky [Trachsel] to an individual in Kill

Devil Hills [North Carolina]."  [R. 4, Pls. Resp. at p. 4] (citing [R. 2-2, Ex. A, Macky Bell Aff.]

).  At the evidentiary hearing, Trachsel and Jefferson both testified that Macky Bell called

Trachsel, her agent, while she was in North Carolina and specifically directed him to move the

Farm Account to an agent in North Carolina and to remove Plaintiffs as POAs on the Account.

Plaintiffs's conversion and breach of fiduciary duty claims arise from these activities, and satisfy

§ 454.210(2)(a)(3). *See Beavers, et al. v. Riley Built, Inc., et al.,* 2017 WL 5633258 (W.D. Ky.

2017) (holding that single visit to Kentucky by defendant's agent where he made disparaging

comments about plaintiffs was sufficient to satisfy jurisdiction under the "causing tortious

injury" prong and that plaintiffs' defamation claim arose from that act); *but cf. Crum v. Estate of*

*Mayberry*, No. CIV. 14-84-ART, 2014 WL 7012122, at *5 (E.D. Ky. Dec. 11, 2014) (finding

fraudulent withdrawals of Kentucky resident's account that took place from ATM machine

*located out of state* did not satisfy KY. REV. ST. § 454.210(2)(a)(3)'s textual requirements that

tortious injury must have taken place from within the Commonwealth.).

### 2.    Due Process Clause

That Plaintiffs satisfied Kentucky's long arm statute is not the end of the inquiry; they

must also satisfy Due Process.  The Due Process Clause creates limits on a State's power to bind

a foreign defendant to a judgment of its courts.  *Power Investments, LLC v. SL EC, LLC*, 927

F.3d 914, 917 (6th Cir. 2019) (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S., 286,

291 (1980)).  Only when a foreign defendant has certain "minimum contacts" with the State

sufficient to satisfy "traditional notions of fair play and substantial justice" may the state court exercise jurisdiction over it. *Int't Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A State can claim two types of personal jurisdiction against a defendant – general or specific. General jurisdiction "turns on the defendant's generic connections to the State – say that it resides there or regularly does business there – connections that need not have any relationship to the allegations in the Complaint." *Power Investments*, 927 F.3d at 917. Specific jurisdiction "turns on the defendant's case-related contacts to the jurisdiction." *Id.* The Court will address specific jurisdiction, since that is where the parties focused their arguments. *See* [R. 2-1, Def. Mem. in Supp., at pp. 7-9; R. 5, Pls. Resp., at p. 5]

Specific jurisdiction requires the Court to focus on the "affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation omitted). Under this analysis, a *defendant's* "suit-related conduct," must establish "a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The plaintiff must show that the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state." *Power Investments*, 927 F.3d at 917 (quoting *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012)). The Sixth Circuit recently offered the following guidance on what kind of contacts will qualify under these standards:

> A single deal with an in-forum resident also does not by itself suffice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). But a contract that bears a "*substantial* connection" to the forum, such as one designed to exploit the forum's market, *Walden*, 571 U.S. at 284–85 (emphasis added), or a "*20-year relationship that envisioned continuing and wide-reaching contacts with [the plaintiff] in [the forum]*," makes the cut, *Burger King*, 471 U.S. at 479–80 . . .

*Power Investments*, 927 F.3d 917–18. (emphasis added to final citation).

In *Power Investments*, the Sixth Circuit found the Due Process prong of personal

jurisdiction satisfied where the defendant never physically entered Kentucky, but rather called, e-mailed and texted plaintiff, a Kentucky resident, hundreds of times in an effort to secure financing for a business venture. The Court emphasized the reality that "modern business often occurs electronically and by phone" and such will "not defeat personal jurisdiction . . . if the defendant's 'efforts are purposefully directed toward residents of another State.'" *Power Investments*, 927 F.3d at 919 (quoting *Burger King*, 471 U.S. at 476).

As in *Power Investments*, Macky Bell "purposefully availed" herself to the privilege of doing business in Kentucky and causing a consequence here. Her contacts with Kentucky were substantial, continuing, and wide-reaching. She maintained and managed her entire financial life in Kentucky. She frequently visited Kentucky to see her investment advisor, bank, CPA and lawyer. She regularly called Trachsel to direct him regarding her investment accounts, including the Farm Account, and she even maintained her regular checking account with a bank in Cynthiana, Kentucky. Hauling Macky Bell (or her Executrix) into a Kentucky Court does not offend "traditional notions of fair play and substantial justice." *See Int'l Shoe Co.,* 326 U.S. at 316.[8]

### B. Transfer of Venue

Defendant alternatively moves the Court for a change of venue pursuant to 28 U.S.C. § 1404(a). [R. 2-1, Def. Mem. in Supp., at pp. 9-11] 28 U.S.C. § 1404(a) states in relevant part that the Court "may transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses [and] in the interest of justice . . ."

---

[8] Although Plaintiffs did not make this argument at the evidentiary hearing, the facts elicited at the hearing demonstrate that general jurisdiction is likely satisfied here. Macky Bell's contacts with Kentucky were of such a "continuous and systematic nature" that she likely could be sued for any conduct—not just for actions related to her contacts with Kentucky. *Bird v. Parsons,* 289 F.3d 865, 873 (6th Cir.2002).

28 U.S.C. § 1404(a).

Deciding on a motion to transfer venue requires the Court to make an "individualized, case-by-case consideration of convenience and fairness," *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The Court has broad discretion to determine when convenience or the interests of justice make transfer appropriate. *Reese v. CNH Am., LLC,* 574 F.3d 315, 320 (6th Cir. 2009); *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir.1994). When ruling on a transfer motion, courts within the Sixth Circuit have identified nine factors to consider:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Cowden v. Parker & Assoc., Inc.*, No. 5:09–CV–0323–KKC, 2010 WL 715850, at *3 (E.D. Ky. Feb.22, 2010) (citing *Perceptron, Inc. v. Silicon Video, Inc.,* 423 F.Supp.2d 722, 729 (E.D. Mich. 2006)). The burden is on the party seeking transfer, and a plaintiff's choice of forum is ordinarily entitled to considerable weight. *MSDG Mobile, LLC v. Am. Fed., Inc.*, No. 1:05 CV 123 M, 2006 WL 515531, at *2 (W.D. Ky. Feb. 28, 2006) (citation omitted).

Here, the balance of factors weighs in favor of denying Defendant's Motion to Transfer. The Court need only address those factors relevant to its § 1404(a) analysis here.

### 1.    Convenience of witnesses.

Defendant focused almost entirely on the hardship imposed on then-Defendant Macky Bell, who was ninety-two (92) at the time and a resident of North Carolina, should she be required to travel to Kentucky to defend this lawsuit. [R. 2-1, Def. Mem. in Supp., at pp. 10-11] With the unfortunate passing of Macky Bell, however, this argument loses considerable steam.

Defendant Jefferson, as executrix of Macky Bell's estate, is a now the sole defendant in this case. Jefferson is a Virginia resident, and the Court finds that it would be no more inconvenient for her to travel to Kentucky than to North Carolina to defend this lawsuit. Without identifying any specific witnesses, counsel advised the Court at the hearing that there were "several" defense witnesses who lived in North Carolina. The Court finds this unsupported assertion unconvincing. As demonstrated at the parties' evidentiary hearing, however, at least several Plaintiffs' witnesses reside in the Eastern District of Kentucky. They include Trachsel (the Edward Jones advisor), Ingram (Macky Bell's CPA), and Mac Bell (one of the plaintiffs). [R. 1-1, Compl., at ¶ 1]    This factor weighs heavily against transfer.

### 2.       The location of relevant documents and relative ease of access to sources of proof.

This factor weighs slightly against transfer. At least some of the relevant documents in this case are located in Kentucky – the real estate records related to the sale of the Family Farm, any documents Trachsel may have, and any relevant documents held by Macky Bell's CPA or her local Cynthiana Bank. Although it is true, as Defendant points out, that Trachsel no longer has access to the Farm Account, the evidence at the hearing demonstrated that such account documents are held at Edward Jones' corporate offices in St. Louis (not in North Carolina).

### 3.       The convenience of the parties.

This factor weighs against transfer. Both Plaintiffs support venue in Kentucky as the most convenient. With the passing of Macky Bell, and the fact that her representative, Jefferson, is a Virginia resident, the Court can see little traction for the argument that the convenience of the parties necessitates transfer to North Carolina, where none of the parties resides. Additionally, "a motion to transfer venue under Section 1404(a) cannot be used simply to shift the inconvenience of litigation from the defendant to the plaintiff." *Thompson Thrift Const., Inc.*

*v. Hyman Plumbing Co.*, No. CIV.A. 5:13-050-DCR, 2013 WL 3566353, at \*5 (E.D. Ky. July 11, 2013) (quoting *Copeland v. Choice Fabricators, Inc.*, 492 F.Supp.2d 783, 789 (S.D. Ohio Sept. 19, 2005)).

### 4. The locus of the operative facts.

This factor also weighs against transfer. At this stage, the Court must construe the well-pleaded allegations in the Complaint as true. Based on the Complaint, many of the operative facts in this case took place in Kentucky. The Family Farm was located in Cynthiana and the proceeds from its sale were placed in an Edward Jones account managed in Cynthiana for many years. No doubt some relevant facts will surround Macky Bell's activities in North Carolina, but Defendant has failed to articulate such facts with specificity.

### 5. The weight accorded the plaintiff's choice of forum.

This factor also weighs against transfer. "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951). Plaintiffs chose to litigate in Kentucky and absent a good reason to do so, the Court will no disturb that decision.

### 6. Trial efficiency and the interests of justice, based on the totality of the circumstances.

Finally, the Court notes that this case has already been the subject of an intra-district reassignment, and the Motion before it has been pending for over a year and a half while the Court addressed several interim issues. *See* [R. 2; R. 7] Transfer of this case would likely result in further delays which would not promote efficiency or the interest of justice.

Based on the above, and with the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss [**R. 2**] is **DENIED**.

2.    Defendant's Motion to Transfer [**R. 2**] is **DENIED**.

This the 26th day of August, 2019.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY